THE PHŒNIX INSURANCE CO. v. THE PORT CLINTON FISH CO. ET AL.

1. INSURANCE COMPANY BOUND, FOR FULL AMOUNT NAMED IN POLICY, ALTHOUGH THERE IS CONCURRENT INSURANCE.

Where there is a total loss of a building or structure, an insurance company is bound under section 3643, Revised Statutes, to pay the full amount of insurance thereon designated in its policy, although there may be other concurrent insurance by other companies thereon; and in such case a provision in the policy that the question of the amount of the loss shall be submitted to and determined by appraisers, is of no binding force. The court dissents from the decision of the superior court of Cincinnati, in *Cin Coffin Co.* v. *Ins. Co.*, 7 Weekly Law Bulletin, 342, and calls attention to a typographical error in the revision of 1880, of the statutes, involving a material change from the original law as passed and found in the session laws, and the court disregards said change.

2. TOTAL OR PARTIAL LOSS, QUESTION FOR JURY.

The question whether the loss was total or partial is for the jury to determine.

3. TOTAL LOSS DEFINED—INSURANCE OF FISH HOUSE, ADDITIONS, FOUNDATIONS AND DOCK.

A loss may be total, although part of the structure may not be consumed by the fire. Where a fish-house, additions, docks and foundations constitute a single structure, and are insured as a single structure by a "blanket" policy, and a fire consumes all of the structure but a part of the dock, which is left intact, but is of no use or value as it stands, and it appears that to rebuild the whole structure it would be necessary to tear down and remove such part of the dock remaining, and that the cost of such removal and replacement of such unconsumed part of the dock would exceed in amount the value of the materials therein that could be saved and used in such rebuilding, and the value of such materials for any use is less than the cost of saving and utilizing the same, the loss is total.

PARKER, J. (orally.)

This is a proceeding in error brought to reverse the judgment of the court of common pleas. The action below was brought by The Port Clinton Fish Company, and other persons interested, on a policy of insurance issued by the Phœnix Insurance Company insuring a certain fish house, with foundation and docks and appurtenances, situated upon the north side of the Portage river in the village of Port Clinton, Ohio The issues made up by the pleadings are very clearly and distinctly stated in the charge of the court and therefore I will quote from that with slight modifications to give a statement of the issues:

"The plaintiffs in their petition set forth that the Fish Company is a corporation duly organized under the laws of the state of Ohio, and F. L. Felch is assignee in trust for the benefit of the creditors of the

Sandusky Savings Bank Company; that the defendant is an insurance company, a corporation duly organized and existing under the laws of the state of New York and doing business under the laws of the state of Ohio; that on the 28th day of August, 1894, the Port Clinton Fish Company, being the owner of a frame shingle roof building with frame composition roof and addition thereto, including docks and foundations situated on the north bank of the Portage river in Port Clinton, Ohio, in consideration of the premium of $40.00 paid, did by its policy of insurance in writing insure the plaintiff company against loss or damage by fire on said property to the amount of $2,000, from August 28, 1894, at 12 o'clock, noon, to August 28, 1895, at 12 o'clock, noon. On said 28th day of August, 1894, it was agreed by and between plaintiffs and defendant that the loss, if any, should be payable to said F. L. Felch, assignee, who holds a mortgage on the property; that the plaintiff duly performed all the conditions of said contract, and on the 11th day of December, 1894, said property was totally destroyed by fire, and the plaintiff's loss by fire was $2,000.

"That on December 13, 1894, the plaintiff company notified defendant of said loss in writing, and on December 24, 1894, defendant was furnished with due proof of loss; that said defendant has not paid said loss; and judgment is asked for $2,000, with interest from February 23, 1895.

"Defendant in its amended answer admits the incorporation of the plaintiff and defendant companies, the execution and delivery of the policy mentioned in the petition to said plaintiff company, and denies the other allegations of the petition not therein specifically admitted.

"The answer sets forth that it is provided in the policy that the sound value and damage to the property may be determined by mutual agreement between the Insurance Company and the assured, or failing to agree, the same shall then be submitted to the arbitration of two arbitrators and one umpire to be selected in a certain manner, and the award of any two of them in writing under oath shall be binding and conclusive as to the damages; that no suit or action against the defendant company for the recovery of any claim, by virtue of the policy, shall be sustainable until after an award shall have been obtained fixing the amount of the claim in the manner provided, which is agreed to be a condition precedent.

"Defendant avers that the company and the assured failed to agree, and did not agree as to the amount of the sound value and damage to the property covered by the policy, or any part thereof, and that said plaintiff, after request, refused to submit the question as to the amount of sound value and of damage, as provided in the policy.

"That it was further provided in said policy, that if the interest of the assured in the property be other than an unconditional exclusive ownership, and if it be real estate, if it be other than an unencumbered and exclusive ownership, and if it be real property, if it be other than an absolute fee simple title, or if there be a mortgage it must so notify the company and be so expressed in the written policy, otherwise the policy shall be void.

"The defendant company alleges that the plaintiff company was not such owner, and it was not so expressed in the written part, or any other part of the policy, and plaintiff company's title was not an unconditional, exclusive ownership, and there was an undivided one-fifth

interest in the title of said property in another at the time of the issuing of the policy, and therefore the policy was absolutely void.

"That it was provided in the policy that in case of any other insurance upon the property insured, whether prior to or subsequent to the date of the policy, the assured should be entitled to recover no greater proportion of the loss sustained then the sum for which the policy was issued bears to the whole amount insured thereon, and all other insurance should be subject to average in like manner; that at the time of the pretended loss there was another outstanding policy of insurance upon the property described in the petition amounting to $1,200, and the loss sustained by the insured was not total, but only partial, and did not exceed the sum of $2,000, and the other policy is contributing insurance for said amount, and defendant can only be required to pay its proportionate share.

"Plaintiffs in reply deny that there was a partial loss; deny that the interest of the assured in the property covered by the policy was other than unconditional exclusive ownership, and that there was an outstanding undivided one-fifth of the title to said property in another, and deny that the loss was not total but only partial, and did not exceed $2,000 and that said other policy of $1,200, was and is contributing insurance for said amount."

Upon the trial a verdict was rendered in favor of plaintiff below for the amount claimed, $2,000, and interest. There was also a special verdict or answers to certain interrogatories returned by the jury, reference to which will be made later. A motion was made for a new trial setting forth about all the grounds mentioned in the statute, all of them perhaps, and this was overruled, and error is prosecuted here on account of the rulings of the court on the trial of the case as to the admission and exclusion of testimony, the action of the court in charging certain propositions of law as requested by the plaintiff in error; and various exceptions are taken to the charge as given, and to the overruling of the motion for a new trial.

As I have said the property insured consisted of a fish house and a dock and foundation, all of these various properties standing together and being attached one to the other. One of the principal questions raised upon the trial of the case was as to whether or not they were one structure or whether the dock was a separate and independent structure from the fish house, it being conceded upon the trial that the fish house above the foundation or wharf was totally destroyed, and that certain parts of the dock remained after the fire, intact. The written part of the policy of insurance which describes the property and states the amount of insurance written upon it, reads as follows:

"$2,000 on their shingle roof frame building with frame composition roof, and addition thereto attached and including docks and foundations occupied by assured for their fish business, situated on the north bank of Portage river, Port Clinton, Ohio. Loss if any payable to F. L. Felch, assignee of the Sandusky Savings Bank Co. Mortgagee. Other Insurance permitted."

It will be observed that there is a single amount stated; that the form of the insurance upon this structure, or these structures, is what is known among insurance men as the "blanket" form of policy. It does not undertake to describe the building as a structure by itself and place a certain amount of insurance upon that, and then describe a dock or any other part of the structure as a structure by itself, and place insur-

ance upon that, but it says "$2,000 on their shingle roof frame building with frame composition roof, and addition thereto attached including docks and foundations occupied" etc.

It seems to us that the policy of insurance treats the docks and foundations and the superstructure as one structure; that the parties have so treated these various parts of the structure in their contract.

When we come to look at the testimony as to the form of these structures, the dock, the building, the additions and foundations, etc., we are convinced that by the testimony it fairly appears to be but a single structure; that the dock, so-called, perhaps more properly called a wharf, is as much a part of the building as the foundation; that it would be no more proper to speak of the dock as being a separate and distinct structure than to speak of the foundation as being separate and distinct; as one of the witnesses aptly says, "the dock sustains about the same relation to the fish house that a porch would to a residence."

The fish house was upon the land side of this dock. The dock extended out farther into the water than any part of the fish house, the dock extending a distance of 141 feet and 6 inches, as I understand the plat, along the north bank of the river, the east end being 14 feet wide and the west end being 18 feet wide. A particular description of the dock and of the whole structure is given by witnesses which we will not take time to repeat, but we will say in a general way that both dock fish house were built upon piling driven into soft mud in the bottom of the river and on the north side of the river. According to the testimony of some of the witnesses, the fish house proper extended back from the dock about 14 feet and 3 inches; according to the testimony of other witnesses, however, the statement is made, which we deem quite reasonable, taking into consideration all of the surroundings, that the floor of the fish house was a part of the dock, I do not undertake to give the language of the witnesses, but it amounts to that; that the fish house, in other words, is built upon the dock.

The testimony tends to show that in constructing this fish house and dock it was necessary to begin to drive piling into the ground at the shore, or as far toward the shore as it was desired to have the structure extend. That the piles nearest the shore must have been first driven; that the work was done from the water, beginning at the shore, and as it proceeded it extended out into the water; and that the rebuilding of the structure must progress in the same way and order, so that in order to make any use of the planking, the piles, or any part of the structure of the dock which was not destroyed by fire, it would be necessary to remove it, to take it away, tear it up, pull out the piles or otherwise dispose of them so as to be able to begin near the shore in order to build out again as the dock and building was originally constructed.

There are photographs and plats attached to the bill of exceptions showing how much of the dock was left standing after the fire, and without undertaking to describe it by feet or by particular parts of the structure I will say generally, that it appears that about three-fourths of the dock remained standing after the fire.

At the close of the testimony the defendant requested the court to charge the jury either before or after the argument certain propositions. It appears that the first proposition requested was given. Whether the nine following propositions were given or not appears only inferentially; it is not distinctly stated that they were not given, neither is it stated they were given. It is stated that the defendant excepted to the

court not giving them or to the refusal to give them, and following these requests as given in the bill of exceptions, is this statement—"And thereupon the court charged the jury as follows," and then follows the charge of the court. We have proceeded upon the theory, however, that these requests were not given, but were refused.

The first refused, being the second of the series, is as follows:

"The defendant requests the court to instruct the jury that it being admitted by the pleadings that the plaintiff, the Port Clinton Fish Co refused to submit to the appraisal requested by the defendant to determine the amount of the loss, the plaintiffs cannot recover, such appraisal, under the terms of the policy, being a precedent condition to the right to maintain a suit on the policy."

That proposition it will be observed is stated without reference to the question as to whether there was other concurrent insurance. The court properly refused to charge that. The case of *Insurance Co.* v. *Leslie*, 47 O. S., 409, states the law upon the subject and is based upon sections 3643 and 3644, Revised Statutes, commonly known as the "Howland Law." I will read from the syllabus:

"1. The act of March 5, 1879, "to regulate contracts of insurance of buildings and structures," (now sections 3643 and 3644 of the Revised Statutes), applies to all policies issued since it went into effect, insuring any building or structures in this state, against loss or damage by fire. The neglect or omission of the company's agent to make the examination of the property and fix its insurable value. as the statute requires, cannot prevent its application to a policy issued by the com pany, or defeat or affect the operation of the statute.

"2. The statute is founded upon considerations of public policy; its purpose being, to exact diligence and care on the part of insurance companies to avoid improper risks and over insurance, by requiring them to cause their agents to make personal examination of the property, a full description thereof, and fix its insurable value, as well as to protect the insured against unreasonable forfeitures and defenses. The more effectually to accomplish these results, the statute holds the company liable in its policy, unless after its issue, a change occurs increasing the risk, without its consent, or the insured has been guilty of intentional fraud; and in case of the total loss of the property by fire, the measure of the liability is fixed at the amount mentioned in the policy, upon which the insurer received a premium. The statute cannot be regarded as conferring upon the assured a mere personal privilege which may be waived by agreement. It moulds the obligation of the contract into conformity with its provisions, and establishes the rule and measure of the insurer's liability.

"3. Conditions of the policy providing for a different rule or measure of liability, being in conflict with the statute, are without any binding force. Of this character are stipulations to the effect that the amount of the loss or damage shall be estimated according to the actual value of the property at the time of the fire, and not more than it would cost the insurer or insured to restore the same; and, that no action on the policy shall be commenced until an award of arbitrators, chosen for that purpose, shall be obtained."

The statute referred to reads as follows:

"Section 3643. Any person, company, or association, hereafter insuring any building or structure against loss or damages by fire or lightening, by a renewal of a policy heretofore issued, or otherwise, shall

cause such building or structure to be examined by an agent of the insurer, and a full description thereof to be made, and the insurable value thereof to be fixed by such agent; in the absence of any change increasing the risk without the consent of the insurer's and also of intentional fraud on the part of the insured, in case of total loss, the whole amount mentioned in the policy or renewal upon which the insurers receive a premium shall be paid, and in case of a partial loss the full amount of the partial loss shall be paid; and in case there are two or more policies upon the property, each policy shall contribute to the payment of the whole or the partial loss in proportion to the amount of insurance mentioned in each policy; but in no case shall the insurer be required to pay more than the amount mentioned in its policy.''

''Section 3644. A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party hereafter issuing a policy upon such application or a renewal thereof, anything in the application or policy to the contrary notwithstanding.

This proposition would have been right if it had been conceded that it was but a partial loss; but that was one of the issues, one of the serious questions in the case, and the verdict of the jury upon that question necessarily is, and we think it is supported by the evidence, that the loss was not partial but total   The verdict states that all of the property was not destroyed, yet it can well be seen that a loss may be total though all of the property insured may not be reduced to smoke and ashes.   The testimony in the case tends to show and does show very clearly that the part which was left of those structures was in a condition and situation that it would cost more to remove it to use it for any purpose it might have been used for than the materials were worth; that it could not be used in its situation as it was after the fire for any purpose and it was of no value in that condition, and it would cost more than the value of the materials to remove it and replace it as it was originally so as to answer the purposes that the original did.   The case just read, therefore, disposes, we think, very clearly of this proposition which the court was asked to charge.

The third proposition is as follows:

'The defendant, asks the court to instruct the jury that it appearing by the uncontradicted evidence in this case there was two policies on the premises covered by the defendant's policy, and that the defendant in this case, after the loss and before the suit was brought, demanded an appraisal of the damage occasioned by the fire, and the insured refused to submit to such appraisal, the plaintiffs cannot recover, because the right to an appraisal in any case exists, independent of the Ohio statute, where there are two or more policies on the same property.''

This brings us to the construction of the last clause of section 3643 which I will read again:

"And in case there are two or more policies upon the property each policy shall contribute to the payment of the whole or the partial loss in proportion to the amount of insurance mentioned in each policy; but in no case shall the insurer be required to pay more than the amount mentioned in its policy.''

' In a case decided by Judge Harmon of the Cincinnati superior court, 8 Dec. Re., 422, where this particular paragraph of this section was under consideration, Judge Harmon held, "that the effect of this provision was simply to keep in force the old law with reference to concurrent insurance and that the provisions that a company should be liable for

the amount of insurance written upon a certain property without respect to the actual value of the property had no application where there were two or more policies."

After a full consideration of this question, however, we have come to a different conclusion. We believe that it is the purpose and intent of this statute to require insurance companies writing policies upon a building, in case of total loss, to pay the full amount of the insurance, and that the statute applies as well to cases where there is more than one as where there is but a single policy. The construction given to the act by the superior court of Cincinnati would tend to defeat the purpose of the legislature in a very large measure, because in many instances two or more policies are written, and if that rule were adopted two or more policies would be written in most cases insurance companies would seek to avoid the purpose of the statute by so writing other insurance. Insurance companies are to exercise diligence and care and avoid improper risks and over insurance by causing their agents to make a personal examination of the property and fix its insurable value before writing the insurance. In this case it appears that this policy was written by the defendant company and that afterward in pursuance of the permission given in its policy, another policy of $1,200 was written upon the same property.

The basis, therefore, of the contribution, according to our view of this statute, would be the whole amount of the insurance written by all of the companies and included in all of the policies. In this case it would be $3,200; and if the loss were total, as it appears to have been, then the one company would be liable for $2,000 and the other for $1,200. In case of a partial loss there is a contribution upon a different basis, i. e., the whole amount of actual loss from or damage by the fire.

Insurance companies may protect themselves against loss by writing in their policies "other concurrent insurance not permitted," or by fixing the limit of other concurrent insurance. In this case the defendant company has not attempted in that way to fix its liability. But after arriving at this conclusion as to the purpose and meaning of this statute our attention was brought to the orginal act, the so-called "Howland Law," passed upon the 5th day of March, 1879, and appearing on page 26 of Volume 76 of the Session Laws; and upon reading that and considering the means by which this statute was brought into Revised Statutes by the codifiers, it is made entirely clear to us that there is a typographical error in the Revised Statutes, and that no change of this law as originally passed on March 5, 1879, was intended by legislature; and the original act makes it entirely clear that insurance companies are as well liable for the whole amount of their policy where there is concurrent insurance and many policies as where there is but a single policy. The Revised Statutes reads, that each policy shall contribute to the payment of the whole or partial loss in proportion to the amount of insurance mentioned in each policy.

The original act reads—"in case there are two or more policies upon the property each policy shall contribute to the whole of the partial loss in proportion to the amount of the insurance in each policy."

It is true, as suggested by Judge Harmon, that this part of section 3643 reads very much like a chinese puzzle; and it is apparent that his attention was not called to the language of the original law.

As I have said, this act was passed upon the 5th day of March, 1879. The Revised Statutes were adopted by the legislature upon the

23d day of June, 1879, a little over three months afterwards. We are confident from such examination as we have been able to make that there will not be found in the House or Senate Journal any reference to this Howland Law after it was passed, nothing tending to show that the legislature had it under consideration again, or intended to make any change, especially such radical change as would have resulted in overturning the rule so recently adopted by the same legislature as to concurrent insurance.

The codifiers or commission that had in charge the codification of the law were not, as is well understood, vested with any authority to make changes, that is to say, any changes that would change the law. Their authority was under an act of the legislature passed upon the 7th of March, 1875, and appearing in Vol. 72, page 87. I do not find a copy of the session law here—but I will read from the preface of the Revised Statutes what, according to my recollection, is an exact statement of what appears in that act.

"The governor was required, by and with the advice and consent of the senate, to appoint three competent commissioners to revise and consolidate the general statutes of the state, and he was authorized to fill any vacancy in the commission.

"In performing the duty, the commissioners were required to bring together all the statutes and parts of statutes relating to the same matter, omitting redundant and obsolete exactments, and such as had no influence on existing rights or remedies, and making alterations to reconcile contradictions, supply omissions, and amend imperfections in the original acts, so as to reduce the general statutes into as concise and comprehensive a form as might be consistent with clear expression of the will of the general assembly—rejecting all equivocal and ambiguous words, and circuitous and tautological phraseology.

"They were required to arrange the statutes under suitable titles, divisions, subdivisions, chapters, and sections with head notes briefly expressive of the matter contained therein, with marginal notes of the contents of each section, with reference to the original act from which it was compiled, and foot notes of the decisions of the supreme court upon the same; and they were required to report the whole, in print, to the general assembly for its adoption."

From time to time they were required to make reports of their progress, and this appears to have been done, and according to our information in no instance did the codifiers attempt to make any radical change in the law without bringing the matter to the attention of the legislature; they were not authorized to do so and in this instance it appears that they did not attempt to do so.

The difference between the Revised Statutes and the original act is the difference of one letter only. The word "or" in the Revised Statutes reads "of" in the original act. It might be pointed out in the decisions of the supreme court since the codification how the supreme court has viewed the matter, and where they have disregarded changes, and have put upon the Revised Statutes the same construction as had been given to the law before it was codified, although there had been some change in phraseology which might admit of a different construction, where it was not clear that a different construction was intended. There are many illustrations of this running through the decisions of the supreme court.

We feel quite sure that this change of one letter is a typographical error, and we therefore so regard and treat it.

The fourth proposition requested is as follows:

"The insured property as described in the policy in this case is as follows: 'On their shingle roof frame building with frame composition roof and addition thereto attached including docks, and foundations, occupied by assured for their fish business,' etc.

"I instruct you that this policy covered the buildings, the addition and also the docks. It is admitted that the building itself was totally destroyed by the fire; but the defendant claims that the docks were only partially destroyed. If you find that the docks were only partially destroyed, and that a substantial portion of them remained uninjured, then and in that case I instruct you that the loss was not total, and the plaintiffs cannot recover."

This was properly refused; it was for the jury to say whether or not it was one structure. If one structure the loss may be total although the property may not be totally destroyed. These propositions are not recognized in the requests to charge.

The fifth proposition requested reads as follows:

"If you find that portions of the docks were built after the warehouse was erected, and that the docks were constructed upon piles that were not under the main building, or the offices, and did not support either the main building or the office, and that the dock east and west of the building was complete in itself, in such case you may find what proportion of such dock was injured by the fire, and if a substantial portion of the docks remained uninjured after the fire, then and in such case the plaintiffs cannot recover."

This was properly refused because the character of the superstructure is not to be fixed necessarily and solely by the time when or order in which the different parts were constructed.

The sixth proposition requested by the defendants reads as follows:

"If you find that the building was erected and occupied as a fish house for some time prior to the erection of the forty feet of the dock on the east. and you further find that such forty feet of the dock was not totally consumed, and that a substantial portion of the same remained after the fire, then your finding should be that the loss was not total, and your verdict should be for the defendant."

This proceeds upon the theory that the dock and fish house are different and independent structures, a matter which was passed upon by the jury, and the jury found they were one structure.

I will not take the time to go through the remaining requests to charge, which are numerous, and point out particularly the faults we find in them, but briefly, we find that each and every one of them contains some one or more of the faults I have indicated in those that I have read and commented on, and we hold that the court did not err in refusing to give these charges. They are based upon the assumption either that the fish house and docks were, as a matter of fact, separate and distinct structures, or that it is the law that where there is concurrent insurance and a total loss an insurer is not liable for the whole amount of the policy.

We find no error in the charge of the court, though various errors are urged, but the claims of error are generally based upon one or the other of these two theories which I have mentioned, and which we find to be wrong. We find that the verdict is supported by the evidence:

that the jury was warranted thereby in finding that the loss was total and not partial.

Exceptions were taken to various questions and answers whereby the plaintiff was permitted to show that the cost of utilizing the planking would be greater than the value of the planking utilized either for the purpose of re-building or any other purpose. We see no error in this. We think it is fair and legitimate to show that the loss was total even if some parts were not consumed by the fire.

We find no error in the proceedings or in the record and the judgment of the common pleas court is affirmed.

*A. T. Brewer* and *Wm. Gordon*, for the Insurance Company.

*E. G. Love* and *C. I. York*, for The Port Clinton Fish Co.